# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 763 | DATE | 10/25/2004 |
| CASE TITLE | MICHAEL MYERS vs. PHILLIPS CHEVROLET, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss is Granted with respect to Count II, intentional interference with prospective business advantage, and Denied with respect to Count III, slander. Count II is dismissed without prejudice. Defendant's informal motion for a more definite statement is Denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | M |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2004 OCT 25 PM 2:13 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MYERS,　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Case No. 04 C 0763
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　Judge Mark Filip
PHILLIPS CHEVROLET, INC., an　　　　)
Illinois Corporation,　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

MEMORANDUM OPINION AND ORDER

DOCKETED
OCT 2 6 2004

Plaintiff Michael Myers ("Plaintiff" or "Myers") is suing his former employer, Defendant Phillips Chevrolet, Inc. ("Defendant" or "Phillips"), alleging: a violation of the Americans with Disabilities Act, pursuant to 42 U.S.C. § 12201(b) (Count I); intentional interference with prospective business advantage (Count II); and slander (Count III). This case is before the Court on Defendant's Motion to Dismiss Counts II and III of Plaintiff's Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 12.)[1] As explained below, Defendant's Motion is denied in part and granted in part.

BACKGROUND FACTS[2]

Phillips employed Myers as a sales superintendent prior to March 18, 2002. (D.E. 1 Count I ¶ 4.) As a sales superintendent, Myers worked six days per week for over forty hours

---

[1] The various docket entries in this case are cited as "D.E. ___."

[2] The background facts are taken from Plaintiff's Complaint (D.E. 1) and are assumed to be true, as the law requires, for present purposes. The Court takes no position concerning whether any of the allegations are actually well founded.

1

each week. (*Id.* ¶ 6.) Myers advised his supervisors and the owner of Phillips that he had been diagnosed with high blood pressure requiring him to take medication. (*Id.* ¶¶ 7-8.) The medication that controlled Myers's condition sometimes caused sleepiness and red cheeks, and at times, caused him to act tired and somewhat erratically. (*Id.* ¶¶ 8-9.) Myers further informed Phillips that he must periodically adjust his medications to optimize their effects upon him. (*Id.* ¶ 10.) Myers did not normally require any special accommodation to perform his job. (*Id.* ¶ 11.)

On or about March 16, 2002, Myers was unable to come to work due to an adverse reaction to his medication (*id.* ¶ 12), and he called his manager to request the day off (*id.* ¶ 13). Initially, the manager reacted hostilely towards the request but eventually indicated that he would have someone cover for Myers. (*Id.*) Myers returned to work on March 18, 2002, and was abruptly terminated. (*Id.* ¶ 14.) Prior to March 16, 2002, Myers performed his duties in a satisfactory manner and maintained an excellent attendance record. (*Id.* ¶ 15.)

Before his termination, the employees and management of Phillips noticed Myers's medical condition and reactions to medication. (*Id.* ¶ 16.) Myers became the subject of jokes and comments concerning sleeping on the job, impairment by drugs and alcohol, and an inability to perform his duties. (*Id.*) Phillips and its agents have told others within the automobile industry that Phillips terminated Myers because he was impaired by the use of drugs and/or alcohol. (D.E. 1 Count II ¶ 17.) Furthermore, Phillips and its agents told these incorrect facts "when persons would call to seek information" on Myers's potential re-employment within the industry. (*Id.* ¶ 18.) As a result of this interference by Phillips and its agents, Myers has been unable to find comparable work within the auto industry. (*Id.* ¶ 20.)

Myers has years of experience as a salesperson and superintendent, and he maintained a

2

very good reputation prior to his employment with Phillips. (*Id.* ¶ 19.) Despite all of this, Phillips and its agents intentionally published untrue facts concerning Myers's termination to potential employers and members of the auto industry. (D.E. 1 Count III ¶ 22.) Moreover, Phillips knows, and always knew, that the allegations are untrue, but continues to publish these allegations of drug and alcohol abuse. (*Id.* ¶ 23.) Phillips's publication of such statements has damaged Myers's reputation. (*Id.* ¶ 24.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *accord Johnson v. Riveria*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts all well-pleaded facts alleged in the complaint as true and draws all reasonable inferences from those facts in favor of Plaintiff. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). The Court need not accept legal conclusions or unsupported factual conclusions from the complaint as true. *See id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).[3]

---

[3] In addition to Federal Rule of Procedure 12(b)(6), Defendant's Motion asserts Federal Rule of Civil Procedure 12(b)(1) as a ground for dismissal of Counts II and III of Plaintiff's complaint. (D.E. 12 at 1.) Plaintiff alleges that this Court has jurisdiction over his Illinois Common Law claims of intentional interference with prospective business advantage and slander pursuant to 28 U.S.C. § 1337. (D.E. 1 Count II ¶ 22; *id.* Count III ¶ 25.) The Court agrees with Defendant that jurisdiction is not appropriate under 28 U.S.C. § 1337, but nevertheless maintains jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## DISCUSSION

I.  Count II - Intentional Interference With Prospective Business Advantage

Myers must allege the following elements to state a viable cause of action for common law intentional interference with prospective business advantage under Illinois law:

> (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.

*Voyles v. Sandia Mortgage Co.*, 751 N.E.2d 1126, 1133 (Ill. 2001) (internal quotations omitted).

With respect to the first element of the cause of action, a reasonable expectancy of entering into a valid business relationship, Phillips argues that Myers failed to allege a sufficient expectancy. (D.E. 12 at 3.) Myers responds by asserting that potential "re-employment" within the auto industry is such an expectancy. (D.E. 15 at 3 ("Plaintiff did have a reasonable expectancy because potential employers were calling the defendant about re-employment of the Plaintiff.").)

At the outset, Phillips argues that to allege a sufficient expectancy, Myers must allege a contract between himself and any third party and identify the third party. (D.E. 12 at 3.) This argument is unsupported by the caselaw. A plaintiff whose economic expectancy is not based in a contract may still recover in tort under the theory of intentional interference with prospective business advantage. *See, e.g., Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 370-71 (Ill. 1998) (holding that interference with an attorney-client relationship was actionable despite at-will arrangement). Likewise, "[t]he Federal Rules do not require that [a plaintiff's] complaint allege the specific third party or class of third parties with whom he claims to have had a valid

4

business expectancy." *Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998); *see also id.* (holding that plaintiff's allegations that defendant "improperly interfered with his 'ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences'" is sufficient identification of the third party).

The Illinois Supreme Court has long recognized a legitimate expectancy in an actual employment relationship: "'[W]here the contract is one of employment, it is immaterial whether it is for a fixed period or is one which is terminable by either party at will, both parties being willing and desiring to continue the employment under that contract for an indefinite period.'" *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) (quoting *London Gurantee & Accident Co. v. Horn*, 69 N.E. 526, 531 (Ill. 1903)) (alteration in original). On the other hand, the Illinois Supreme Court has held that "the hope of receiving a job offer is not a sufficient expectancy." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). In *Anderson*, for example, the plaintiff alleged that she was the "leading candidate" for a position in which the prospective employer had sought her out, the plaintiff had already had interviewed for a position, and she had been told that interviews that had occurred had gone well. *See id.* at 1298-1299. The plaintiff further alleged that her current employer made false statements concerning her work performance to the prospective employer. *See id.* at 1299. In holding that a job prospect is not a sufficient expectancy, even for the "leading candidate," *Anderson* reasoned that allowing the plaintiff to proceed would allow anyone interviewing for a job to bring a claim against anyone who supplied the potential employer with a negative reference, and such an expansion of the tort is unwarranted. *See id.* at 1301; *see also id.* at 1300 ("[W]hile the plaintiff's progression past the initial series of interviews speaks well of her candidacy, it does not by itself demonstrate a

reasonable expectancy of employment. . . . [F]avorable comments of the type allegedly made to this plaintiff should not be regarded as giving rise to a legally protectible expectancy."). Federal courts applying Illinois law have repeatedly applied *Anderson* to reject claims for intentional interference with prospective business advantage where the plaintiff does not have an actual job offer or offer to work but instead has merely "'the hope of receiving a job offer.'" *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998) (quoting *Anderson*, 667 N.E.2d at 1299); *Emery v. Northeast Ill. Regional Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *10 (N.D. Ill. Sept. 18, 2003) (Gottschall, J.) (collecting cases); *see also Croft v. Inlight Risk Mgmt., Inc.*, No. 01 C 1766, 2002 WL 226859, at *6 (N.D. Ill. Feb. 14, 2002) (Kennelly, J.) (distinguishing teaching discussed above because the plaintiff in *Croft* had a "concrete job offer").

Myers cites no cases for the proposition that the potential for "re-employment" within the auto industry differs from any other potential job offer (D.E. 15 at 3), and the Court fails to see any distinction between the two. Furthermore, nothing in Myers's complaint even suggests that he received any job offers from the potential employers. In light of the precedent cited above, the Court finds Myers's "re-employment" argument unpersuasive. Therefore, even taking his facts as true, Myers fails, at least presently, to allege a cognizable claim of intentional interference with prospective business advantage because the mere prospect or hope of "re-employment," without more, does not constitute a sufficient expectancy.

Accordingly, Count II is dismissed without prejudice. Because Plaintiff fails to allege a sufficient expectancy, the Court need not address Defendant's remaining arguments regarding Count II. Because Count II is dismissed without prejudice, Plaintiff is free to amend, if he can, to

6

allege that he had at least one actual job offer or had some basis to believe his job expectancy was more than mere hope or optimism.

II.     Count III - Slander

In Count III, Plaintiff asserts a cause of action for common law slander under Illinois law. Plaintiff alleges that Defendant, by its publication of knowingly false statements regarding Plaintiff's impairment from use of drugs and/or alcohol (D.E. 1 Count III ¶¶ 22-23), damaged Plaintiff's reputation with potential employers and members of the auto industry who were the recipients of such statements (*id* ¶ 24). To state a claim for slander, Plaintiff must allege: "[1] the defendant made a false statement concerning him, [2] that there was an unprivileged publication to a third party with fault by the defendant, [3] which caused damage to the plaintiff." *Kransinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988) (stating elements of defamation tort[4]); *accord Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2004).

A statement is defamatory if it tends to harm the reputation of another by lowering that person in the eyes of the community or deterring third persons from associating with him. *See Van Horne v. Muller*, 705 N.E.2d 898, 903 (Ill. 1999). Certain defamatory statements are actionable *per se* due to their obvious and materially harmful effect on the plaintiff's reputation. *See id.* Appropriately, with a defamatory *per se* statement, a plaintiff need not plead nor prove actual damage to his reputation because the injury is presumed. *See id.* Illinois law recognizes five categories of statements that are defamatory *per se*:

(1) those imputing the commission of a criminal offense; (2) those imputing infection

---

[4]     The Supreme Court of Illinois instructs that "[l]ibel and slander are . . . treated alike and the same rules apply to a defamatory statement regardless of whether the statement is written or oral." *Bryson v. News America Publ'ns, Inc.*, 673 N.E. 2d 1207, 1215 (Ill. 1996).

7

with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity of duties of office or employment; (4) those that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) those imputing adultery or fornication.

*Id.* Myers alleges that the statements made by Phillips to potential employers and members of the auto industry were defamatory *per se* because they implicate violations of Illinois criminal statutes concerning drug and alcohol abuse by Myers. (D.E. 1 ¶ 23.) Defendant makes several arguments for dismissing Count III, which the Court will now address in turn.

A.  Statute of Limitations

Defendant initially contends that Plaintiff's slander claim, Count III, is barred by the statute of limitations (D.E. 12, at 2), and Plaintiff does not respond to this contention. The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *accord United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). "Complaints need not anticipate or attempt to defuse potential defenses." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (citing *Gomez v. Toledo*, 446 U.S. 635 (1980)). A litigant may, however, "plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *Id.*

In Illinois, "[a]ctions for slander [and] libel . . . shall be commenced within one year after the cause of action accrued." 735 ILCS 5/13-201. The statute of limitations is governed by the discovery rule. *See, e.g., Thermal Mgmt., Inc. v. Coactive Networks*, 108 F. Supp. 2d 1029, 1031 (N.D. Ill. 2000). Therefore, the statute of limitations on slander actions does not begin running until "the injured party knows or should have known of his injury." *Id.* (internal quotation omitted). Nothing in Myers's complaint allows the Court to infer the date that Myers knew or should have known the allegedly false statements were made to prospective employers and

members of the auto industry, so he has not pleaded himself out of court on limitations grounds.

    B.    Slander *Per Se*

Phillips next argues that the alleged statements are not defamatory *per se* because neither the use of alcohol nor prescription drugs rises to the level of a felony. (D.E. 12 at 7.) Although Myers alleges slander *per se* on the grounds that Phillips allegedly imputed to him the commission of a criminal offense, the Court need not decide that question because it finds that Plaintiff's Complaint sufficiently alleges that Defendant's statements impute an inability to perform or want of integrity of duties of office or employment (category 3), or prejudice him, or impute lack of ability, in his trade, profession, or business (category 4), to survive a motion to dismiss.[5] Specifically, Myers alleges that Phillips and its agents told "potential employers and members of the auto industry that Myers had been terminated because he was having impairment problems by use of drugs and/or alcohol." (D.E. 1 Count III ¶ 22.)

These statements could be construed as defamatory *per se* under either category 3 or 4 of the actionable *per se* categories. Several courts, including the Illinois Appellate Court, have determined that statements made by employers, supervisors, or business associates regarding the effect of drug or alcohol use by the plaintiff on the job may constitute *per se* defamation. *See, e.g., Welch v. Chicago Tribune Co.*, 340 N.E.2d 539, 545 (Ill. App. 1975) (memorandum distributed in an office indicating sportswriter terminated due to alcoholism could constitute libel *per se* because it indicates an unfitness to perform the duties of employment); *Affolter v. Baugh Constr. Or., Inc.*, 51 P.3d 642, 645 (Or. Ct. App. 2002) (statement that sheet metal worker drank

---

    [5] The Seventh Circuit instructs that a complaint's validity does rest upon setting out a particular legal theory. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

before coming to work and was intoxicated on job site capable of *per se* defamatory meaning because it attacks specific characteristics relating to his field of employment); *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) (inquiries imputing substance abuse could be found defamatory *per se* by a jury because they reflect on plaintiff's capacity to perform the duties of a veterinary assistant).

    C.    Truth

Defendant's third argument is that Plaintiff fails to properly plead a defamation cause of action because the alleged statements made by Defendant are true. (D.E. 12 at 8.) The defense of truth requires only that the defendant demonstrate that the allegedly defamatory statement is substantially true. *See Harrison v. Chicago Sun-Times, Inc.*, 793 N.E.2d 760, 766 (Ill. App. 2003). A motion to dismiss on grounds of truth may be proper, for example, if the plaintiff more or less concedes the essential truth of the allegedly defamatory statement, or if there is no basis for a reasonable jury to find that the allegedly defamatory statement was not substantially true even as framed in the plaintiff's own allegations. *See Clark v. Maurer*, 824 F.2d 565, 566 (7th Cir.1987); *accord Wynne v. Stevenson*, No. 02 C 5263, 2002 WL 31804497, at *4 (N.D. Ill. Dec. 13, 2002).

Myers alleges that at times his medication caused him to act erratically as compared to his behavior absent medication. (D.E. 1 Count I ¶ 9.) Myers does not concede that drugs or alcohol impaired his ability work. Nor does the complaint contain anything indicating that Myers concedes to using alcohol. To the contrary, Myers alleges that prior to his termination he performed his duties in a satisfactory manner. (*Id.* ¶ 15.) Importantly, Myers also stresses the allegedly defamatory statements are untrue. (*Id.* Count III ¶ 22; D.E. 15 at 7.) Thus, at this point

in the proceedings, Phillips has not established the truth of the statements, and it would be improper for the Court to dismiss Count II of the complaint on grounds of truth. *See Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *8 (N.D. Ill. Sept. 11, 2002).

### D. Qualified Privilege

Phillips asserts that it maintained a qualified privilege in relating statements concerning Myers's on-the-job performance to potential employers. (D.E. 12 at 9; D.E. 17 at 7.) In Illinois law, "[a] privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable." *Kuwik v. Starmark Star Mktg. and Admin., Inc.*, 619 N.E.2d 129, 134 (Ill. 1993) (internal quotations omitted). A qualified privilege serves to enhance a plaintiff's burden of proof such that where defendant establishes a privilege, a plaintiff must prove that the defendant "either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Id.* at 133. A qualified privilege arises in three situations: (1) situations involving an interest of the publisher of the defamatory statement; (2) situations involving an interest of the recipient of the defamatory statement or some other third party; and (3) situations involving a recognized public interest. *See id.* at 135.

A qualified privilege operates as an affirmative defense to certain defamation claims. *See Babb v. Minder*, 806 F.2d 749, 753 (7th Cir. 1986). Therefore, a plaintiff is not required to plead facts demonstrating that a statement is unprivileged unless the complaint affirmatively shows the statement is privileged. *See Chisholm v. Foothill Capital Corp.*, 940 F. Supp. 1273, 1285 (N.D. Ill. 1996). Under Illinois law, the defendant-employer may have a qualified privilege if the

11

defamation claim arises out of an employer-employee relationship. *See Krasinski*, 530 N.E.2d at 471. As stated above, however, a plaintiff may overcome the privilege by pleading (and eventually proving) that the statement was made with actual malice—*i.e.*, made with knowledge of its falsity or in reckless disregard of whether it is true or false. *See id.*

Even if Phillips maintained a qualified privilege in communicating the allegedly defamatory statements to potential employers (a point which the Court need not reach at this stage of the proceedings), Myers has alleged actual malice. (*See* D.E. Count III ¶ 23 ("Phillips knew these allegations were untrue about Myers.").) Thus, despite Phillips's assertions to the contrary, Myers's allegations that Phillips knew the statements were false is sufficient to overcome the privilege and state a claim for defamation.

E. Innocent Construction

Phillips next argues that Myers should not be allowed to recover because any otherwise-slanderous statements made by Phillips can be given an innocent construction. (D.E. 12 at 12.) A statement that is reasonably capable of an innocent construction will not be found defamatory *per se*. *See Bryson v. News America Publications, Inc.*, 672 N.E. 2d 1207, 1215 (Ill. 1996). The innocent construction rule requires a consideration of the statement "in context, giving the words, and their implications, their natural and obvious meaning." *Id.* The Seventh Circuit instructs that whether a statement is capable of innocent construction is a question of fact.[6] *See Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003). A motion to dismiss would be appropriate, therefore, only if Myers has pleaded himself out of court by

---

[6] In Illinois courts, the same decision is one of law; however, the Seventh Circuit instructs that "[a]llocations of functions between judge and jury in federal court . . . are a matter of federal law." *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003).

12

showing that the federal trier of fact would be compelled to find an innocent construction of the statements. *See id.*

Phillips contends statements concerning Myers's termination due to impairment problems by the use of drugs and/or alcohol are capable of innocent construction.[7] (D.E. 12 at 13.) Phillips argues these statements are innocently interpreted as impairment by the use of prescription drugs. (*Id.*; D.E. 17 at 12.) But Phillips's argument fails before the Court even looks to the construction of "drugs" as implying prescription versus illicit drugs. Because Myers has not alleged the specific statements made by Phillips–nor does he need to, *see Chisholm*, 940 F.Supp. at 1284–a motion to dismiss is not proper at this juncture. The Court will not grant a motion to dismiss based on the rule of innocent construction where facts outside the complaint may be relevant to the reasonableness inquiry–here, the precise content of the allegedly defamatory statements and further facts offered by both parties to give context to those statements. *See Muzikowski*, 322 F.3d at 924-25. Myers may be able to produce evidence showing that no reasonable interpretation of the statements support an innocent construction. *See id.* at 927. For example, Myers may produce evidence that no one could think the statements meant impairment by the use of prescription drugs, and the only plausible interpretation was that Myers's work suffered from his impairment by the use of illegal as opposed to legal drugs. *See id.* To be sure, as the case progresses, Phillips may produce enough facts to support an innocent construction of the statements, but for the time being, the Plaintiff's defamation *per se* claim will not be dismissed on innocent construction grounds.

---

[7] Phillips further contends that Myers has not alleged facts sufficient to meet the requisites of notice pleading. (D.E. 12 at 12.) The Court addresses this argument below.

13

F.  Constitutional Protection of Opinion

Phillips's final argument is that any allegedly defamatory statements were constitutionally protected statements of opinion. (D.E. 12 at 13.) In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990), the Supreme Court rejected adding a separate constitutional privilege for statements of opinion and focused on whether a reasonable factfinder would conclude that the statement implied a factual assertion. Subsequent Seventh Circuit precedent teaches that a statement is not actionable "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). Thus, the dispositive questions become (1) whether the statements allegedly made by Defendant would imply an assertion that Defendant was unable to perform in his job due to his impairment by drugs or alcohol, and (2) whether such an assertion is sufficiently factual to be susceptible of being proved true or false. *See Milkovich*, 479 U.S. at 21.

The allegedly defamatory statement at hand is that Defendant intentionally told potential employers and members of the auto industry that Plaintiff had been terminated due to impairment problems by the use of drugs and/or alcohol. Although the precise contours of the statement may later belie this finding, at this stage of the proceedings, the Court finds that the alleged statements, as a general matter, implied that Plaintiff was unable to perform his job. The Court also finds, at least as matters are currently framed by the pleadings (as opposed to a discovery record), that impairment by drug and/or alcohol use is objectively verifiable. *See, e.g., Newman v. Hansen & Hempel Co.*, No. 01 C 9871, 2002 WL 31455990, at *8 (N.D. Ill. Nov. 1, 2002) (Aspen, J.) (holding that alcoholism is objectively verifiable through diagnosis); *White v.*

14

*Fraternal Order of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990) (holding in a defamation by implication claim that "assertions that someone used illegal drugs . . . –whether express or implied– are articulation[s] of . . . objectively verifiable event[s]") (internal quotation marks and citation omitted). Therefore, the Court denies Defendant's Motion on the grounds that any of the allegedly defamatory statements made were constitutionally protected as opinion.

III.     Motion for More Definite Statement – Federal Rule of Civil Procedure 12(e)

Defendant makes an informal motion for a more definite statement. (D.E. 12 at 15.) The request is moot as to Plaintiff's intentional interference with a prospective business advantage claim because the Court is dismissing the claim. As for the slander *per se* claim, the Court reiterates that any claim for defamation *per se* need only be pleaded in accordance with Federal Rule of Civil Procedure 8. *See Muzikowski*, 322 F.3d at 926. Consequently, Myers complaint need only allege "a short and plain statement of [slander *per se*] showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In order to allow Phillips to answer, Myers is not required to quote the allegedly defamatory language verbatim. *See, e.g., Chisholm*, 940 F. Supp. at 1284-85.[8] Moreover, the specific names of the recipients of the allegedly defamatory statements and dates of publication are matters for discovery and not the complaint. *See id.* at 1285. The complaint includes the basic substance of the allegedly defamatory statements (Myers's termination stemmed from impairment by the use of drugs and/or alcohol), the defamers (Phillips and its agents), and the

---

[8]     The *Chisholm* case is recognized as applying a heightened pleading standard. *See Molina v. Experian Credit Info. Solutions*, No. 02 C 5561, 2003 WL 21147771, at *2 (N.D. Ill. May 14, 2003) (Hibbler, J.). In light of the Seventh Circuit's decision in *Muzikowski*, the Court is confident that Myers's complaint is more than adequate to allow Phillips to answer the complaint considering that Myers can meet the criteria established in *Chisholm*.

recipients of the statements (potential employers and members of the auto industry). This information is adequate for Phillips to form a responsive pleading. *See id.* Accordingly, Defendant's request for a more definite statement is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED with respect to Count II, intentional interference with prospective business advantage, and DENIED with respect to Count III, slander. Count II is dismissed without prejudice. Defendant's informal motion for a more definite statement is DENIED.

So Ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: 10-25-04